# EXHIBIT "C"

| Crowley Logistics, Inc. Org 015721 Tariff 003 | Date Filed: September 18, 2023 | Date Effective: September 18, 2023 | Rule 9 Bill (s) of Lading | Revision: 1st Revised Publishing Code: C |
|---|---|---|---|---|

**BILL(S) OF LADING**

All property transported, unless otherwise agreed in writing between the Shipper(s) and Carrier shall be held, carried, and delivered subject to the conditions of the current Bill of Lading.

Carrier's Proforma Bill of Lading can be obtained by contacting the Carrier.

Carrier will issue Bill of Lading upon information furnished in writing by Shipper.

An "On Board" Bill of Lading will not be issued until cargo is actually on board the carrying vessel and the "On Board" endorsement shall definitely name the date on which the cargo was actually placed aboard.

**CROWLEY TERMS AND CONDITIONS**
**INTRODUCTORY PROVISIONS**

**1. APPLICABILITY OF BILL OF LADING.** The following terms and conditions govern the contractual relationship between Carrier and Shipper with respect to the goods. All prior agreements or freight engagements for the shipment of the goods are superseded by the Bill of Lading. If required by Carrier, a signed Original Bill of Lading, duly endorsed, must be surrendered to the Carrier on delivery of the goods. The absence of signatures of either Carrier or Shipper or both shall not affect the applicability or enforceability of this Bill of Lading. Any Bill of Lading not presented to Carrier on or before the 180th day after its issuance shall be null and void as a negotiable instrument, and ownership of any cargo covered thereby shall be determined in accordance with applicable law.

**2. DEFINITIONS.** Certain terms used in the booking, bill of lading face and back are defined as follows:

(a) VESSEL – The word "Vessel" shall include the vessel named in this Bill of Lading, its towing tug or tugs if the named vessel is a barge, any substitute vessels and any craft, lighter, towboat or other vessel used in the performance of the transportation covered by this Bill of Lading.
(b) CARRIER – The word "Carrier" shall include the company named as carrier on the face side of this Bill of Lading, the vessel as defined herein and her owners, operators and demise and time charterers, any connecting or substituted carrier and any time charterer or person to the extent bound by this Bill of Lading, whether acting as carrier or bailee.
(c) SHIPPER – The word "Shipper" shall include the person named as such in this Bill of Lading, the consignor, the consignee, the owner of the goods, the holder of this Bill of Lading and the person for whose account the goods are shipped.
(d) GOODS – The word "goods" means the cargo accepted from Shipper and includes containers, vans, trailers, rail cars, and/or rolling equipment whether supplied by Carrier or not.
(e) CONTAINER – The word "Container" means any container, van, trailer, railcar, portable tank, rack, pallet, or other item used to contain or hold or isolate cargo.

(f) INTERMODAL SERVICE – The words "intermodal service" mean a combined service pursuant to an applicable tariff involving ocean transportation by Carrier and air, land, water or ocean transportation by a connecting carrier.

(g) CHARGES – The word "charges" shall include without limitation freight, demurrage, and all general average, salvage, special charges, expenses, amounts and money obligations whatsoever payable by or chargeable to Shipper or for account of the goods, regardless of whether sustained, incurred or paid by Carrier in the first instance.

(h) PACKAGE – The word "package" shall include any piece, shipping unit, machine or article of any description, whether or not enclosed or boxed in whole or in part, except goods shipped in bulk, provided, however, that a container, van, trailer, rail car, or rolling equipment is a package when such is listed on the face of the Bill of Lading under the column "number of trailers/containers/packages" regardless of the method used to describe the shipment in the description column on the face. Governmental documents such as Shipper's Export Declarations shall not be considered as an expression of intent of the parties' definition of package as herein defined.

(i) CUSTODY – The word "custody" shall mean when physical possession has been taken by the carrier and an ocean bill of lading issued.

(j) ON BOARD – The words "ON BOARD" shall mean on board the vessel named on the face of this Bill of Lading or on board another mode of transportation operated by or on behalf of Carrier to carry the goods to the port of loading for loading on the vessel named on the face of this Bill of Lading. The words "CLEAN ON BOARD" or other words of similar effect shall not be construed as a representation by Carrier concerning the quality, condition or quantity of the goods.

(k) THROUGH TRANSPORTATION – The words "through transportation" mean that Carrier has agreed to provide or arrange transportation from the point or port of origin to the point or port of delivery, as shown on the face hereof, by means of through routes and rates or joint routes and rates with an air or land carrier and/or another water carrier.

**3. CARRIER'S TARIFFS.** The carriage of the goods hereunder is subject to all of the terms and provisions of the tariffs on file or required to be filed with the Federal Maritime Commission, the Interstate Commerce Commission or other regulatory body, which governs the particular portions of carriage. The terms of said tariff or tariffs are hereby incorporated herein as part of the terms and conditions of this Bill of Lading. All compensation and other amounts (including freight, demurrage and detention) set forth in Carrier's tariffs shall be due and payable in accordance therewith. Said tariff or tariffs shall be available to Shipper on file with the Federal Maritime Commission, Washington, D.C., USA, the Interstate Commerce Commission, or other regulatory body, and also available from any port agent. It shall be solely the responsibility of Shipper to review and comply with such tariff or tariffs.

**4. GOVERNING LAWS (CLAUSE PARAMOUNT).** This Bill of Lading is subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936 ("COGSA"), which are incorporated herein. The defenses and limitations of said Act shall apply to the goods whether carried on or under deck; whether the carriage of goods is in U.S. foreign trade, between United States ports, or between non-United States ports; before the goods are loaded on and/or after goods are discharged from the Vessel, and throughout the entire time the goods are in the custody or are the responsibility of the Carrier, whether acting as carrier, bailee, stevedore, or terminal operator. Carrier shall be entitled to the full benefits of all rights and immunities and all limitations of, and exemptions

Page | 2

from, liability provided in or authorized by 46 U.S.C. Sections 181 to 186, inclusive and 188. Carrier shall also be entitled to the full benefit of all rights and immunities and all limitations of or exemptions from liability contained in any law of the United States or any other country or place whose laws shall be applicable. This Bill of Lading shall not be deemed to give rise to a personal contract of carriage. If this Bill of Lading is issued in Canada, it shall have effect subject to The Water Carriage of Goods Act, 1936, of the Dominion of Canada, which, in such event, it is deemed to be incorporated herein (except as otherwise specifically provided for herein).

**5. INTERMODAL OR SUBSTITUTED SERVICE.** (a) If this Bill of Lading is issued for an Intermodal Service, the connecting air, land or water carrier's contract of carriage or Bill of Lading lawfully in effect, together with the rules and tariffs and classifications of such connecting carrier and applicable rules and regulations of government agencies with jurisdiction over such carriage, shall govern and control the possession and carriage of the goods by such carrier.

(1) Said contract of carriage or bill of lading may contain a released valuation for the goods. Shipper can obtain the terms of such released valuation from Carrier and can arrange through Carrier for the opportunity to declare full value for the goods in consideration for payment of increased freight.

(2) At all times when goods are in the care, custody or control of a connecting air, land or water carrier, such connecting carrier shall be entitled to all rights, privileges, liens, limitations of and exonerations from liability, and to optional or discretionary rights of indemnity granted to Carrier hereunder to the full extent permitted to carriers under any rules and regulations and laws relating to carriers.

(3) Copies of said contracts of carriage or bills of lading are available from such connecting carrier or Carrier or its agents on request.

(b) (1) Carrier may forward in substituted service all or any part of the goods whenever they are consigned to a place where the Vessel does not expect to discharge, or whenever the Carrier, for any reason whatsoever, may deem it advisable. Substituted service may be made at the port of shipment, or at any other place or places, whether or not within the voyage contracted for above, and may be made by any Vessel or Vessels or any other means of air, land or water transportation or combinations of such means selected by Carrier, whether operated by Carrier or not, and regardless of actual or scheduled time of arrival or departure as compared with other means of transportation of carriers.

(2) Substituted service shall in all cases be governed by the bill of lading, freight note, contract or other shipping document of the oncarrier, whether issued or not, even though less favorable to Shipper in any respect whatsoever than this Bill of Lading and even though Carrier's own bill of lading has been issued, in which case such issuance is for convenience only and does not bind Carrier after the goods have been discharged from Carrier's Vessel.

(3) In all matters whatsoever connected with substituted service Carrier shall act solely as Shipper's forwarding agent and without any further responsibility. Shipper expressly authorizes Carrier, as such agent, to arrange with the oncarrier for the lowest valuation of the

goods or limitations of liability contained in such bill of lading or other documents of the oncarrier.

(4) Pending or during transshipment or forwarding, Carrier may store the goods in any place, ashore or afloat, at the risk and expense of the goods, and in so doing shall be considered solely the agent of Shipper. Carrier shall not be liable for any detention, delay, misdelivery, conversion, loss or damage after the goods have been discharged from Carrier's Vessel. The goods and Shipper shall be liable for all additional costs of every nature, including, but not limited to, storage, cartage, handling charges or increase in oncarrying rates beyond those used in computing freight charges on this shipment.

(5) Carrier or the master, in the exercise of its or his discretion, may at any time, whether or not customary and without notice require the goods to be lightered to or from the vessel at the risk and expense of the goods, and, in this event, Carrier or the master may make arrangement for lighterage or use of craft but, in so doing, shall be considered solely as the agent of Shipper and without any other responsibility whatsoever. Carrier shall not be responsible for the choice of conditions, seaworthiness or manning of such lighter or craft or in the custody of the lightermen who shall be considered agents of the Shipper. If Carrier elects to lighter the goods in or with lighters or crafts operated or controlled by it, Carrier shall have the benefit of all the liberties, rights, exemptions, immunities and limitations contained in this Bill of Lading with respect to such lighterage and may collect the cost thereof from shipper.

**6. PERSONS COVERED (HIMALAYA CLAUSE).** All exceptions, exemptions, defenses, immunities, limitations of liability, privileges and conditions granted or provided by this Bill of Lading, applicable tariff, or by COGSA or by any applicable statute for the benefit of the Vessel or Carrier shall also apply to and for the benefit of the master, officers and crew of the Vessel and to and for the benefit of all corporations parent of, subsidiary to, affiliated with or under the same management as Carrier, as well as all directors, officers, employees and agents of said corporations, and to and for the benefit of all parties performing services for or on behalf of the Vessel or Carrier as employees, servants, agents or contractors of Carrier (including without limitation, stevedores, vessel boarding agents, warehousemen, and terminal operators) and the directors, officers, employees, servants, agents and subcontractors of such parties.

**7. NO RECOURSE CLAUSE.** The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, but except in the instances where it may lawfully be authorized to do so, no Carrier by railroad shall deliver or relinquish possession at destination of the property covered by the Bill of Lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for freight and all other lawful charges, except that if the shipper stipulates, by signature, in the space provided for that purpose on the face of the Bill of Lading that the Carrier shall not make delivery without requiring payment of such charges and the Carrier, contrary to such stipulation, shall make delivery without requiring such payment, the Shipper (except as hereinafter provided) shall not be liable for such charges. Provided that, where the Carrier has been instructed by the Shipper to deliver said property to a consignee other than the Shipper, such consignee shall not be legally liable for transportation charges in respect of the transportation of said property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be

Page | 4

due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in said property, and (b) prior to delivery of said property as notified the delivering Carrier in writing of the fact of such agency and absence of beneficial title, and in the case of a shipment reconsigned or diverted to a point other than that specified in the original Bill of Lading has also notified delivering Carrier in writing of the name and address of the beneficial owner of said property and, in such cases the Shipper, or, in case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges. If the consignee has given to the Carrier erroneous information as to who the beneficial owner is, such consignee shall himself be liable for such additional charges. On shipments reconsigned or diverted by an agent who has furnished the Carrier in the reconsignment or diversion order with a notice of agency and the proper name and address of the beneficial owner, and where such shipments are refused or abandoned at ultimate destination, the said beneficial owner shall be liable for all legally applicable charges in connection therewith. If the reconsignor or diverter has given to the Carrier erroneous information as to who the beneficial owner is, such reconsignor or diverter shall himself be liable for all such charges. If a Shipper of a shipment of property (other than a prepaid shipment) is also the consignee named in the bill of lading, and prior to the time of delivery, notifies, in writing, a delivering Carrier by railroad (a) to deliver such property at destination to another party, (b) that such party is the beneficial owner of such property, and (c) that delivery is to be made to such party only upon payment of all transportation charges in respect of the transportation of such property, and delivery is made by the Carrier to such party without payment, such Shipper shall not be liable (as Shipper, consignee or otherwise) for such transportation charges but the party to whom delivery is so made shall in any event be liable for transportation charges billed against the property at the time of such delivery, and also for any additional charges which may be found to be due after delivery of the property, except that if such party prior to such delivery has notified in writing the delivering Carrier that he is not the beneficial owner of the property and has given in writing to such delivering Carrier the name and address of such beneficial owner, such party shall not be liable for any additional charges which may be found to be due after delivery of the property; but if the party to whom delivery is made has given to the Carrier erroneous information as to beneficial owner, such party shall nevertheless be liable for such additional charges. If the shipper or consignee has given to the delivering Carrier erroneous information as to who the beneficial owner is, such Shipper or consignor shall himself be liable for such transportation charges, notwithstanding the foregoing provisions of this paragraph and irrespective of any provisions to the contrary in the bill of lading or in the contract for transportation under which the shipment was made. The term "delivering Carrier" means the line-haul Carrier making ultimate delivery. Nothing herein shall limit the right of the Carrier to require at time of shipment the prepayment or guarantee of the charges. If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped. CARRIER'S PERFORMANCE

**8. SCOPE OF VOYAGE/LIBERTIES.** The scope of voyage herein contracted for shall include usual or customary ports of call, whether named in this Bill of Lading or not, and also ports in and out of the geographical, usual or ordinary route or order, even though in proceeding thereto the Vessel may sail beyond the port of discharge or in a direction contrary thereto or return to the original port or depart from the direct or customary route, and includes all canals, straits and other waters. The Vessel may call at any port or ports, whether scheduled or not, and may call at the same port more than once. The Vessel may, for matters occurring before loading the goods, known or unknown at the time of such

Page | 5

loading, and matters occurring after such loading, either with or without the goods on board, and before or after proceeding toward the port of discharge, adjust compasses, drydock with or without cargo aboard, go on ways or to repair yards, shift berths, make trial trips or tests, take fuel or stores in any quantity at the discretion of Carrier, remain in port, sail with or without pilots, tow and be towed, and go to the assistance of Vessels in distress to save or attempt to save life or property, and all the foregoing are included in the contract voyage and shall not be considered deviations. All derelicts and salvage shall be for the sole benefit of Carrier. Carrier may substitute another Vessel for the named Vessel(s) at any time prior to or during the voyage whether in a feeder service, a relay service or otherwise. Carrier makes no warranties to the time of delivery of the goods or that the goods will be delivered for any particular use or market. If the Vessel's intended route, either when proceeding to the loading port or on the voyage to the destination port, is via the Suez Canal or the Panama Canal, then the exclusive route of the Vessel shall be by the way of said canal.

**9. ON-DECK CARRIAGE.** Goods stowed in any covered space or in a container carried on deck of the Vessel shall be deemed to be stowed under deck and in all respects the custody and carriage of such good shall be governed by the terms of this Bill of Lading and COGSA, notwithstanding Section 1(c) thereof. If goods are stowed on deck and not in containers, all risks of loss or damage by perils inherent in or incident to such carriage shall be borne by Shipper but in all other respects the custody and carriage of such goods shall be governed by the terms of this Bill of Lading and COGSA, notwithstanding Section 1(c). When transportation hereunder is accomplished by the use of an unmanned barge or barges, the following special provisions shall apply and are instead of the preceding paragraph: (a) Such unmanned barge or barges shall be towed by a towing vessel or vessels, on a single, double, or multiple tow basis. (b) All goods accepted hereunder may be carried without notice to Shipper either under the covered deckhouse (if any) or on deck or on the roof of the deckhouse (if any) of said barge or barges at Carrier's option, any custom or practice of the trade to the contrary notwithstanding. Goods so carried shall be subject to the provisions herein and shall participate in general average; and (c) All risk of loss or damage by perils inherent in or incident to such carriage shall be borne by Shipper but in all other respects the custody and carriage of such goods shall be governed by the terms of this Bill of Lading and COGSA, notwithstanding Section 1(c) thereof.

**10. MATTERS AFFECTING PERFORMANCE.** In any situation whatsoever and wheresoever occurring and whether existing or anticipated before commencement of or taking place during the voyage, including the period before and during discharge, which in the judgment of Carrier or the master is likely to give rise to risk of capture, seizure, detention, damage, delay (howsoever long or short) or disadvantage to or loss of the Vessel or any part of her cargo or goods, or to make it unsafe, imprudent, unlawful or impossible for any reason to commence or proceed on or continue the voyage, or to enter or discharge or continue to discharge the goods at the port of discharge or give rise to any delay (howsoever long or short) or difficulty in arriving, discharging or continuing to discharge, or leaving the port of discharge, Carrier or the master may before loading or before the commencement of the voyage, require Shipper to take delivery of the goods at the port of shipment, and upon failure to do so may discharge and warehouse the goods at Shipper's risk and expense, or Carrier or the master, whether or not proceeding toward or entering or attempting to enter a port of discharge, or reaching or attempting to reach a usual place of discharge therein or attempting to discharge the goods, may discharge the goods, and/or unpack the containers at the port of shipment or at any other

part in depot, lighter, craft or other place, or may discharge and forward them by any means (air, land, rail or water), at the risk and expense of Shipper to any port or place whatsoever at Carrier's or the master's sole discretion and Carrier or the master in making arrangements for any such forwarding shall be the forwarding agent of Sipper, or the Vessel may proceed or return directly or indirectly to or stop at any port or place whatsoever at Carrier's or master's sole discretion and discharge the goods or any part thereof at any such port, or Carrier may retain same on board until the return trip or until such time as Carrier or the master thinks advisable and discharge them at any place whatsoever as herein provided. All additional charges and expenses incurred as a result of such circumstances and Carrier's responses thereto shall be for the account of Shipper. Discharge of the goods under the provisions of this clause shall constitute complete delivery and performance under this contract and Carrier shall be freed from any further responsibility. When the goods are discharged from the Vessel as provided in this clause they shall be at the risk and expense of Shipper. When the place of delivery is named herein and the goods are oncarried by Carrier from the port at which they are discharged from the Vessel as provided in this clause to such place of delivery Shipper shall pay all additional charges and transport costs in connection herewith.

**11. GOVERNMENTAL OR OTHER ORDERS.** Carrier, the master and the Vessel shall have liberty to comply with any directions, recommendations, orders, requirements or suggestions as to the Vessel, her voyage, employment or movements, or any disposition or other matter whatsoever relating to the goods and including but not limited to loading, departure, arrival, routes, zones, ports of call, stoppages, discharge destination, delivery or in any other matter whatsoever given by the government of the nation under whose flag the Vessel sails or any other governmental or local authority including any de facto government or local authority, or by any person or body acting or purporting to act as or with the authority of any such government or authority, or by any committee or person having under the terms of the war risks insurance on the Vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations anything is done or is not done, such shall not be deemed a deviation. Delivery or disposition of the goods in accordance with such directions, recommendations, orders or suggestions shall be deemed in accordance with and a fulfillment of the contract voyage. In complying therewith Carrier shall have, but shall not be limited to, the liberties as to disposition of the goods contained in Clause 6 hereof. Carrier and Vessel may carry goods declared by any belligerent to be contraband, persons belonging to or intending to join, the armed forces or government services of any belligerent, explosives, munitions, war-like stores or hazardous cargo, and may sail armed or unarmed, with or without convoy. In addition to all other liberties herein, Carrier shall have the right to withhold delivery of, re-ship to, deposit or discharge the goods at any place whatsoever, surrender or dispose of the goods in accordance with any direction, condition or agreement imposed upon or exacted from Carrier by any government or department thereof or any person purporting to act with the authority of either of them. In any of the above circumstances, Carrier shall have no further responsibility for the goods, and the goods shall be solely at their risk and expense, and all expenses and charges so incurred shall be payable by Shipper and shall be liens on the goods.

**12. STRIKE CLAUSE.** If any actual or threatened labor disturbance of any kind, including strikes, lockouts, stoppages and restraints of labor from any cause whatsoever, will in the opinion of the master or Carrier prevent or delay the Vessel in reaching the loading or discharge berth, prevent or delay loading or discharge of cargo, prevent or delay departure of the Vessel from the loading or

Page | 7

discharge port or result in damage to the Vessel or her cargo or injury to the Vessel's crew, Carrier shall have the option at any time to wait at or off the loading or discharge berth until the master or Carrier determines it is safe for the Vessel to enter, and if the goods are to be there loaded, to cancel carriage of the goods pursuant to this Bill of Lading, to depart the loading berth with whatever goods have been loaded aboard the Vessel, or with Shipper's consent to load the goods at Shipper's expense at an alternative port, or, if the goods are to be there discharged, to discharge the goods or a portion thereof at an alternative port, the next scheduled port of call or the loading port which discharges shall constitute complete delivery under this Bill of Lading.

**13. IMPEDIMENTS TO NAVIGATION.** (a) Canals. If passage through the Suez Canal or the Panama Canal in order to reach the loading port or discharging port and/or to perform the voyage is in the judgment of Carrier or the master likely to be hindered, delayed or prevented by reason of actual happening of and/or aftereffects of and/or threat of landslide, earthquake, flood, obstruction, war, riot, strike, civil commotion, sabotage, orders or threats or acts of any government de jure or de facto or any similar or dissimilar cause whatsoever, the voyage shall be deemed frustrated. If such frustration occurs prior to the loading of the goods, this contract thereupon shall terminate. If such frustration occurs after loading on the goods, Carrier may, in addition to the other rights contained in this Bill of Lading, order the Vessel to proceed to and discharge the goods at any other port at Carrier's discretion. All expenses incurred in discharging and storing the goods at such alternate port of discharge shall be for the account of Shipper and the goods. Such discharge of the goods shall constitute complete delivery and performance under this Bill of Lading and Carrier shall be freed from any further responsibility. b. Ice Clause. If ice or the threat thereof will in the opinion of Carrier prevent or delay the Vessel in reaching the loading or discharging berth, prevent or delay loading or discharge of cargo, prevent or delay departure of the Vessel from the loading or discharge port, or result in damage to the Vessel or her cargo or in injury to the Vessel's crew, Carrier shall have the option at any time to wait at or off the loading port until the master or Carrier determines it is safe for the Vessel to enter, and if the goods are to be there loaded, to cancel carriage of the goods pursuant to this Bill of Lading, to depart the loading port with whatever goods have been loaded aboard the Vessel, or with Shipper's consent to load the goods at Shipper's expense at an alternative port, or if the goods are to be there discharged, to discharge the goods or a portion thereof at any alternative port, the next scheduled port of call, or the port of loading with discharge shall constitute complete delivery under this Bill of Lading.

**14. CARRIAGE AFFECTED BY CONDITION OF GOODS.** If it appears to Carrier or the master at any time that the goods or any part thereof cannot safely be carried or carried further, either at all or without incurring any additional expense or taking any measure(s) in relation to the container or the goods or any part thereof, Carrier or the master may, without notice to Shipper, take any measure(s) and/or incur any reasonable additional expense to carry or to continue the carriage thereof, and/or abandon the carriage and/or store the same ashore or afloat under cover or in the open, at any place, which abandonment or storage shall be deemed to constitute due delivery under this Bill of Lading. Shipper shall indemnify Carrier for any reasonable additional expense so incurred.

CARRIER'S LIABILITY

**15. LIABILITY FOR CARGO LOSS OR DAMAGE.** In the event of loss, damage or delay of the goods, the carrier having custody of the goods at the time of such event of loss, damage or delay shall be

Page | 8

responsible therefore in accordance with the terms and conditions of the governing bill of lading or other contract of affreightment. In the event the time of such loss, damage or delay cannot be determined and Carrier has arranged through transportation, it shall be presumed that such loss, damage or delay of the goods occurred while the Carrier had custody of the goods. If Carrier did not arrange through transportation and no loss, damage or delay has been noted at the time the goods are delivered out of Carrier's custody, it shall be presumed that such loss, damage or delay did not occur while the Carrier had custody of the goods. Carrier shall in no event be held liable in the absence of actual proven negligence or willful misconduct on the part of the Carrier.

**16. AGREED VALUE: LIMITATION ON CARRIER'S LIABILITY.** Carrier's liability may be modified by the declaration by Shipper of higher ad valorem values and by the payment of higher ad valorem charges according to the applicable tariff. Carrier's liability may also be reduced to a specific release value amount according to the applicable tariff. When a released value rate applies to a shipment a Shipper cannot declare an ad valorem value. UNLESS SHIPPER DECLARES THE VALUE OF THE GOODS BEFORE SHIPMENT, SO STATES ON THE FACE OF THE BILL OF LADING, AND PAYS FREIGHT CHARGES AND THE AD VALOREM RATE, THE PUBLISHED TARIFF RATE SHALL APPLY AND CARRIER'S LIABILITY WILL BE STRICTLY LIMITED. If the goods move under the published tariff rate, Carrier shall not be liable in any event in an amount exceeding $500 (USD) per package, or in the case of goods not shipped in packages, per customary freight unit. If the goods move under an ad valorem rate, Carrier shall not be liable in any event in an amount exceeding such declared value, and any partial loss or damages shall be adjusted pro rata. Carrier shall in no event be responsible to Shipper or to any third party for indirect or consequential damages, including without limitation extra expense, loss of profits, products liability, product recall expense, testing, compliance with Government regulation or requirement, loss of use of property, delay or damages consequential upon loss of use whether resulting from negligence, breach of this contract or otherwise by Carrier and even if the possibility of such damages was foreseeable by Carrier or Shipper had advised Carrier of the possibility of such damages. Carrier shall have the option of replacing any lost goods and replacing or reconditioning any damaged goods. No oral declaration or agreement shall be evidence of a value different from the provided herein.

**17. INSURANCE.** The freight for transportation of certain types of cargo may include marine insurance purchased by Carrier for the benefit of Shipper. If applicable, said insurance includes limitations, terms and conditions that may limit or preclude recovery in various cases. SHIPPER SHOULD CONSULT CARRIER'S TARIFF(S) APPLICABLE TO THIS BILL OF LADING TO DETERMINE IF MARINE INSURANCE IS PROVIDED FOR THE TRADE AND GOODS COVERED BY THIS BILL OF LADING, AND IF PROVIDED, TO DETERMINE THE TERMS OF THE MARINE INSURANCE. IF THE TARIFF OF CARRIER IS SILENT ON THE SUBJECT, NO MARINE INSURANCE HAS BEEN PURCHASED BY CARRIER FOR THE BENEFIT OF SHIPPER.

**18. EXCEPTIONS CLAUSE.** Carrier shall not be liable for any loss, damage, delay or failure in performance hereunder occurring at any time, including before loading on or after discharge from the Vessel or during any voyage, arising or resulting from the happening and/or threat and/or after effects of one or more of the following: act of God, act of war, force majeure, quarantine restrictions, embargo, acts of public enemies, thieves, pirates, assailing thieves, arrest or restraint of princes, rulers or people, seizure under legal process, act or omission of Shipper, its agent or representative, strikes or lockouts or stoppage or restraint of labor from whatever cause, partial or general, riots or civil commotions, act, neglect or default of the master, pilots, mariners or other servants of Carrier in the navigation or management of the Vessel, barratry, ice, fire unless caused by the actual fault or privity

of the Carrier, explosion, collision, stranding, perils, dangers and accidents of the sea or other navigable waters, wastage in bulk or weight or any other loss or damage arising from inherent defect, quality, or vice of the goods, insufficiency of packing, insufficiency or inadequacy of marks, bursting of boilers, breakage of shafts or any latent defect in hull, equipment, machinery, hawsers or lines, unseaworthiness unless caused by want of due diligence on the part of Carrier to make the Vessel seaworthy or to have her properly manned, equipped and supplied, saving or attempting to save life or property at sea or any deviation in rendering such service, loss of or material damage to the Vessel, or any other similar or dissimilar cause beyond the control of Carrier.

**19. GENERAL AVERAGE/NEW JASON CLAUSE.** In the event of accident, danger, peril, damage or disaster, before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which Carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salvaging ship is owned or operated by Carrier, salvage shall be paid for as fully and in the same manner as if such salvage ship or ships belonged to strangers. General average shall be adjusted, stated and settled according to York-Antwerp Rules 1974, excluding Rule 22, at such port or place in the United States as may be selected by Carrier, and as to matters not provided for by these Rules according to the laws and usages of the port of San Francisco. Notwithstanding Rule 10(b) of said York-Antwerp Rules, however, it is expressly agreed that the cost of handling, discharging and restowing cargo shall be admitted as general average when reasonably necessary for the safe Prosecution of the voyage, as well as under the circumstances set forth in said rule. In such adjustment, disbursements in foreign currencies shall be exchanged into United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or bond and such additional security as may be required by Carrier must be furnished before delivery of goods. Such cash deposit as Carrier or its agent may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to Carrier before delivery. Such deposit shall, at the option of Carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the general average, and refunds or credit balances, if any, shall be paid in United States money.

**20. BOTH TO BLAIM COLLISIONS.** If the vessel comes into collision with another ship as a result of negligence of the other ship and any act, neglect or default of the master, mariner, pilot or servants of the Carrier in the navigation or in the management of the Vessel, Shipper shall indemnify Carrier against all loss or liability to the other or non-carrying ship or her owners, insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of Shipper paid or payable by the other or non-carrying ship or her owners to Shipper and setoff, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the Vessel or Carrier. The foregoing provision shall also apply where the owners, operators or those in charge of any ship or ships or

Page | 10

objects other than or in addition to the colliding ships or objects are at fault in respect of a collision or contact.

## SHIPPER'S RESPONSIBILITY

**21. EARNED FREIGHT AND LIEN OF CARRIER.** Full freight demurrage and other charges hereunder to destination shall be considered completely and irrevocably earned upon commencement of loading at the port of loading or place of receipt shown on the face hereof whether the freight be stated or intended to be prepaid or to be collected at destination, and Carrier shall be entitled to all freight and charges due hereunder whether actually paid or not and to receive and retain them irrevocably under all circumstances whatsoever, the Vessel and/or goods lost or not lost or the voyage broken up of abandoned. Freight shall be payable on actual gross intake weight or measurement or at Carrier's option on actual gross discharge weight or measurement. Freight may be calculated on the basis of the particulars of the goods furnished by Shipper but Carrier may at any time open the packages and examine, weigh, measure, and value the goods. In case Shipper's particulars are found to be erroneous and additional freight is payable, Shipper and the goods shall be liable for any expense incurred for examining, weighing, measuring and valuing the goods. Freight, demurrage, and other charges shall be paid to Carrier in United States currency, without discount or setoff of any kind, including any claim for loss or damage to the goods, at such place and in such manner as the Carrier may direct. Such charges shall be paid in full regardless of any claim by Shipper that a tariff applies other than that under which Carrier has assessed charges, or that the charges are unreasonable or unlawful under applicable law. Any such claim shall instead be pursued by a separate action before the Federal Maritime Commission, Interstate Commerce Commission, or other agency where the tariff sought to be applied by Carrier has been filed. Carrier shall be entitled to recover all costs of collection, including reasonable attorneys fees and expenses. Carrier shall have a lien on the goods for any charges payable to Carrier under this contract. Where permitted by law, Carrier's lien hereunder also covers any charges payable to Carrier by Shipper under any other bill of lading issued by Carrier. Carrier shall have the right to sell the goods by public auction or private treaty without notice to Shipper, and Shipper shall remain responsible for payment of such sums due hereunder. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than Carrier or its authorized agent shall not be deemed payment to Carrier and shall be made at payer's sole risk.

**22. DESCRIPTION AND PACKING OF GOODS.** Any reference on the face hereof to marks, numbers, description, quality, quantity, gauge, weight, measure, kind, value and any other particulars of the goods as furnished by the Shipper, and Carrier shall not be responsible for the accuracy thereof. The weight or quantity of any bulk cargo inserted in this Bill of Lading is the weight or quantity as ascertained by a third party other than the Carrier and Carrier makes no representation with regard to the accuracy thereof. This Bill of Lading shall not be evidence against the Carrier of receipt of goods or the weight or quantity so inserted in the Bill of Lading. When containers are not packed or loaded by Carrier, Carrier has no reasonable means of checking the quantity, weight, condition or existence of the contents thereof and does not represent the quantity, weight, condition or existence of such contents as furnished by Shipper and inserted in this Bill of Lading, to be accurate, and shall not be liable for non-receipt, non-delivery or misdescription of such contents. Carrier shall have no responsibility or liability whatsoever for the packing, loading, security and/or stowage of contents of such cargo units or for loss or damage caused thereby or resulting therefrom, or for the physical suitability or structural adequacy of such cargo units properly to contain their contents. Shipper, by

Page | 11

packing or loading the cargo unit and/or by allowing the cargo unit to be so packed or loaded, represents and warrants (a) that the contents are properly described, marked, secured and packed in their respective cargo units, that such cargo units are physically suitable, sound and structurally adequate properly to contain and support the goods during handling and on the voyage and that the cargo units may be handled in the ordinary course without damage to themselves or to their contents, or to the Vessel or her other cargo, or property, or persons and (b) that all particulars with regard to the cargo units and their contents and the weight of each cargo unit are in all respects correct and (c) that Shipper has ascertained and disclosed in writing to the Carrier on or prior to shipment any condition, ingredient or characteristic of the goods which might indicate that they are of flammable, explosive, corrosive, radioactive, noxious, hazardous or dangerous nature, or which might cause damage, injury or detriment to the goods or to the Vessel or other cargo or property of persons, and (d) that Shipper has properly packed, loaded, classified, described, marked, and labeled all hazardous materials in accordance with applicable regulations of the Department of Transportation or other governmental agencies or intergovernmental bodies, and that all such goods are in proper condition for transportation by Carrier. Shipper agrees fully to protect and indemnify Carrier and to hold it harmless in respect of any injury or death of any person, or loss or damage to cargo or cargo unit or any other property or to the Vessel, or expense or fine, arising out of, or in any way connected with breach of any representations or warranties, howsoever occurring even without fault of Shipper and even though injury, death, loss or damage is caused in whole or in part by fault of Carrier or unseaworthiness. Notwithstanding the foregoing, Carrier shall neither be liable for nor concluded as to the correctness of any such marks, descriptions or representations. Without undertaking any duty to do so, Carrier reserves the right, at its sole discretion and at any time, to open any container in order to inspect the contents and the stowage or packing thereof, and, at the expense of the goods, to restow or repack the contents whenever, in its judgment, such restowing or repacking is necessary for the safety of the goods or of the cargo unit. Any exercise of this right shall be without liability or responsibility on the part of the Carrier.

**23. COOPERAGE.** Shipper shall be liable for all expenses for mending, cooperage, bailing or reconditioning of the goods or packages and gathering of loose contents of packages; also for any payment, expense, fine, dues, duty, tax, import, loss, damage or detention sustained or incurred by or levied upon Carrier or the Vessel in connection with the goods, however caused, including any action or requirement of any government or governmental authority or person purporting to act under the authority thereof, seizure under legal process of or attempted seizure, incorrect or insufficient marking, numbering or addressing of package of description of the contents, failure of Shipper to procure consular or any other certificates to accompany the goods or to comply with the laws or regulations of any kind imposed with respect to the goods by the authorities at any port or place of any act or omission of Shipper. Shipper shall be liable to Carrier for the payment of all charges and for the obligation of each of them and shall pay all expenses caused by extra handling of the goods for any reason whatsoever.

**24. CARRIER'S EQUIPMENT.** Shipper shall promptly load or discharge and return to Carrier any container to be loaded or discharged by the Shipper. Consignee or agent shall take delivery of its contents, irrespective of whether the goods are damaged or not. Shipper shall be and remain liable, jointly and severally, for any loss or damage to the container during such loading or discharge, howsoever occurring until the container is returned to Carrier's custody, and at tariff rates for any

delay beyond the time allowed for such loading or discharge and for any loss, damage or expense incurred by Carrier as a result of the failure to return the container to Carrier in the same sound condition and state of cleanliness as when received by Shipper. Such loss, damage, delay or expense shall constitute a lien on the goods. PROVISIONS REGARDING CERTAIN COMMODITIES

**25. DANGEROUS GOODS/CONTAINERS.** (1) Carrier undertakes to carry goods of an explosive, flammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious or dangerous nature only upon Carrier's acceptance of a prior written application by Shipper for the carriage of such goods. Such application must accurately state the nature, name, identification number (United Nations (UN) or North America (NA), label and classification of the goods as well as the method of rendering them innocuous with the full names and addresses of the Shipper and consignee. (2) Shipper warrants that it has properly packed, loaded, classified, described, marked, and labeled all hazardous materials in accordance with application regulations of the Department of Transportation or other governmental agencies or intergovernmental bodies, and that all such goods are in proper condition for transportation by Carrier. Shipper shall undertake that the nature of the goods referred to in the preceding paragraph is distinctly and permanently marked and manifested on the outside of the package(s) and container(s) and shall also undertake to submit the documents or certificates required by applicable statues or regulations or by Carrier. (3) Whenever the goods are discovered to have been received by Carrier without complying with paragraph (1) or (2) above or the goods are found to be contraband or prohibited by any laws or regulations at the port of loading, discharge or call or any place or waters during the transport, Carrier shall be entitled to have such goods rendered innocuous, thrown overboard or discharged or otherwise disposed of at Carrier's discretion without compensation and Shipper shall be liable for and indemnify Carrier against any kind of loss, damage or liability including loss of freight, and any expenses directly or indirection arising out of or resulting from such goods. (4) Carrier may exercise or enjoy the right or benefit conferred upon Carrier under the preceding paragraph whenever it is understood that the goods received in compliance with paragraphs (1) and (2) above become dangerous to Carrier, Vessel, cargo, persons and/or other property. (5) Carrier has the right to inspect the contents of the package(s) at any time and anywhere without Shipper's agreement but only at the risk and expense of Shipper.

**26. NUCLEAR CLAUSE.** Notwithstanding any provision whether written or printed contained in this Bill of Lading, it is agreed that nuclear fuels or radioactive waste or products are specifically excluded from the cargo permitted to be loaded or carried under this Bill of Lading. This exclusion does not apply to radio isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purposes provided Carrier's approval has been obtained prior to the loading thereof.

**27. GOODS CARRIED IN SPECIALLY HEATED, COOLED OR VENTILATED COMPARTMENTS OR CONTAINERS.** Carrier does not undertake to carry any goods in specially heated, cooled or ventilated compartments or containers, and shall not be liable for any loss or damage for failure to do so, unless such carriage is expressly agreed and endorsed herein. Where any such express contact is made and included herein Carrier will transport the goods in accordance with applicable tariff provisions and will not be deemed to warrant maintenance of any temperatures and further will have as to such goods, the benefit of all other rights, limitations, immunities, and defenses afforded by this Bill of Lading and by applicable law. Carrier shall not be liable in any respect whatsoever if heat or refrigeration or special cooling facilities are not furnished during loading or discharge or at any part of the time while the goods are on the wharf, craft or other loading or discharging place.

**28. NO VALUABLE.** Shipper agrees not to ship bank bills, coins or currency, deeds, drafts, notes or valuable papers of any kind, jewelry other than costume or novelty jewelry, postage stamps or letters or packets of letters with or without postage stamps affixed, United States Postal Service mail of any class, precious metals or articles manufactured therefrom, precious stones, revenue stamps, antiques, or other related or unrelated old, rare or precious articles of extraordinary value.

**29. LIVE ANIMALS.** Live animals, birds and fish are received, kept and carried solely at Shipper's risk of accident, disease or mortality and without warranty or undertaking whatsoever by Carrier.

**30. WOOD PRODUCTS.** Neither Carrier nor the Vessel shall be responsible for stains, discoloration, snakes, holes, chafage, breakage or splitting of lumber, timber, plywood or wood products, whether or not unprotected or partly covered.

**31. RUST.** It is agreed that superficial rust, oxidation or any like condition due to moisture is not a condition of damage but is inherent in the nature of the goods, and acknowledgment of receipt of the goods in apparent good order and condition is not representation that such conditions or rust, oxidation and the like did not exist on receipt. OTHER PROVISIONS

**32. NOTICE OF LOSS OR DAMAGE – TIME FOR SUIT.** Unless notice of loss or damage and the general nature of such loss or damage be given in writing to Carrier or his agents before or at time of delivery of the container(s) or the goods to Shipper, such delivery shall be PRIMA FACIE evidence of the receipt by Shipper of the container of the goods as described in this Bill of Lading. If the loss or damage is not apparent the notice must be given within three days of the delivery. In any event Carrier shall be discharged from any liability unless suit is brought within one year after delivery of the goods or the date the goods should have been delivered. Suit shall not be deemed brought against Carrier or Vessel unless jurisdiction shall have been obtained over Carrier or Vessel, or both, by service of process on Carrier or a written agreement by Carrier to appear.

**33. HEADINGS FOR CONVENIENCE ONLY.** The headings of the clauses are for the convenience of reference only and shall not affect the interpretation of the terms of this Bill of Lading.

**34. APPLICABLE LAW – SEVERABILITY.** This Bill of Lading shall be construed according to the laws of the United States and the Shipper, consignee and holder hereof agree that any suits against the Carrier shall be brought in the Federal Courts of the United States. The terms of this Bill of Lading shall be separate and, if any part or term hereof shall be held invalid, such holding shall not affect the validity or enforceability of any other part or term hereof. Nothing contained in this Bill of Lading shall be deemed a surrender, waiver or reduction by the Carrier, or operate to deprive the Carrier, of any of its rights, immunities, exemptions, limitations or liberties, or an increase of any of its responsibilities or liabilities under the aforementioned laws or any other laws.